UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| PSKS, Inc. d/b/a Kay's Kloset…Kay's Shoes; and Toni Cochran, L.L.C., d/b/a Toni's, | |
| *Plaintiffs*, | |
| vs. | Civil Action No. 2-03CV-107-TJW |
| Leegin Creative Leather Products, Inc., | |
| *Defendant*. | |

MOTION TO DISMISS

I.    INTRODUCTION

In *PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 127 S.Ct. 2705 (2007) (hereinafter *Leegin*), the Supreme Court reversed the jury verdict in plaintiff's favor in this case. In so doing, it overturned almost 100 years of antitrust jurisprudence that had judged resale price maintenance agreements under the *per se* standard.  For the purposes of this case, the Supreme Court decision represents not just binding precedent, but the blueprint for any attempt by plaintiff to relitigate its claims.

After reviewing the facts of Brighton's pricing policy – as established in the previous trial – the Supreme Court found that resale price maintenance agreements "can have procompetitive effects."  *Id.* at 2710.  The Supreme Court stated that these policies "stimulate interbrand competition – the competition among manufacturers selling different brands of the same type of product – by reducing intrabrand competition – the competition among retailers selling the same brand."  *Id.* at 2715; *see also id.* at 2715-16 (discussing numerous examples of how resale price

maintenance enhance interbrand competition).  The Supreme Court stated that the "justifications for vertical price restraints are similar to those for other vertical restraints." *Id* at 2715. Accordingly, the Supreme Court held that, like other non-price vertical restraints, "vertical price restraints are to be judged by the rule of reason." *Id.* at 2710.

Under established rule of reason case law, plaintiff is required to plead and prove "that the defendant's activities, on balance, adversely affected competition in the appropriate product and geographic markets." *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 627 (5th Cir. 2002).  "The first step in analyzing a Section 1 claim is defining the relevant product and geographic market." *Id.*  This is because "[w]ithout a definition of that market there is no way to measure [defendant's] ability to lessen or destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).  Second, plaintiff is required to plead and prove anticompetitive effects, *i.e.,* that defendant has market power within that market and has adversely effected competition. *Futurevision Cable Systems of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 768 (S.D. Miss. 1992) (dismissing complaint for failure to adequately allege market power and anticompetitive effects), *aff'd* 986 F.2d 1418 (5th Cir. 1993); *see also Muenster Butane, Inc., v. Stewart Co.* 651 F.2d 292, 296-98 (5th Cir. 1991) (reversing jury verdict for terminated dealer for lack of proof of anticompetitive effects).

PSKS has not met these requirements in its Second Amended Complaint ("SAC").  It fails on the first one because both of its proposed relevant product markets are untenable under well established rules of law.  Plaintiff's stated market of "*the retail market for Brighton women's accessories*" (SAC ¶ 24) (emphasis added), is erroneous as a matter of law because a brand of women's accessories, no matter how "distinctive", cannot constitute the entire relevant product market. *Spahr v. Leegin*, No. 2:07-CV-187, 2008 WL 3914461 (E.D. Tenn. Aug. 20,

2008) (holding Brighton-brand products could not constitute a relevant product market of their own);[1] *see also Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1282 (10th Cir. 2004) ("Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market.").  Plaintiff's other alleged market of "*wholesale sale* of *brand-name women's accessories to independent retailers*" (SAC ¶ 24) (emphasis added) is flawed because plaintiff has not justified the numerous narrow limitations such as "brand name" products or "independent retailers."  Plaintiff's wholesale market also does not comport with its alleged product market of the greater Dallas area.  Plaintiff, as a wholesale purchaser, buys Brighton products that are manufactured in Los Angeles.  That alone shows the geographic market is not limited to Dallas.  PSKS's failure to allege a tenable relevant market requires dismissal of the Second Amended Complaint.  *Apani Southwest, Inc.*, 300 F.3d at 627.

Even if PSKS had alleged a tenable relevant market, the complaint still fails as a matter of law, because it has not alleged facts demonstrating that Brighton has market power or that the policy has had any anticompetitive effect.  Plaintiff claims that Brighton's prices are higher, but, for a vertical restraint, anticompetitive effect means something other than higher prices for the brand.  The Supreme Court identified narrow circumstances under which higher retail prices might be anticompetitive — manufacturer cartels, retailer cartels, a dominant retailer, or a manufacturer with market power seeking to exclude small competitors — and none have been alleged here.  Without factual allegations of an anticompetitive effect the complaint must be dismissed on that ground as well.

---

[1] As will be discussed later, PSKS is not the first plaintiff to bring an antitrust suit against Leegin under the rule of reason.  In August of 2007, a little over a month after the Supreme Court's decision in *Leegin*, consumers in Tennessee filed an antitrust suit in federal court challenging Leegin's resale price maintenance policy.  The court there, faced with many of the same allegations plaintiff makes here, dismissed the complaint with prejudice.  *Spahr v. Leegin*, No. 2:07-CV-187, 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008).

Perhaps recognizing that its complaint could not survive under the rule of reason standard, PSKS attempts to shoehorn its case back into a *per se* analysis by alleging that Brighton's ownership of retail stores makes this restraint horizontal. This attempt flies in the face of the United States Supreme Court's mandate. PSKS cannot allege a horizontal conspiracy, because it did not allege it in the trial below. In addition, even if the mandate rule did not bar this claim, substantive antitrust law does. Under established Fifth Circuit precedent, a manufacturer that also distributes its product through its own retail stores is known as a "dual distributor" and its conduct is still judged as a vertical restraint under the rule of reason. *Red Diamond Supply Inc. v. Liquid Carbonic Corp.*, 637 F.2d 1001, 1004 (5th Cir. 1981).

## II.    FACTUAL ALLEGATIONS

### A.    The Parties

Plaintiff, PSKS, Inc., did business as Kay's Kloset, a retail store for fashion, shoes, and accessories. SAC ¶¶ 6, 21. It was located in Lewisville, Texas and served customers in the greater Dallas market area. *Id.* ¶ 7. It carried the Brighton brand of products until Brighton ceased shipments to it. *Id.* ¶¶ 6, 21. Defendant, Leegin Creative Leather Products, Inc., manufactures and distributes Brighton-brand products. *Id.* ¶ 8. It distributes its products both in its own retail stores and also to independent retailers. *Id.* ¶ 8.

### B.    Leegin's Pricing Policy

Plaintiff alleges that Brighton "solicits agreements from retailers not to discount Brighton products, . . ." *Id.* ¶ 9. Plaintiff alleges Brighton has entered agreements with retailers not to discount through its Heart Store programs (*id.* ¶ 10), luggage agreements (*id.* ¶ 11), and franchising contracts. *Id.* ¶ 12. Although plaintiff alleges that Leegin made changes to the policy and began to enforce it "with greater regularity" "at the insistence of other retailers (*id.* ¶

13), plaintiff does not allege that retailers were the source of the policy or that Brighton established the policy at the request of retailers.  Indeed, in its First Amended Complaint Plaintiff had affirmatively alleged that Leegin "set up" the pricing policy, "which it enforces to effect vertical pricing control."  First Amended Complaint ("FAC") ¶ 14; *see also* FAC ¶ 17 ("Defendant has developed and enforced a pricing policy whereby retailers for Brighton products are required to observe suggested retail prices.").  Plaintiff does not allege that Brighton entered into agreements with its competitors, nor do they allege that retailers entered into agreements with each other.

###    C.    The Relevant Market and Market Power

Plaintiff posits two possible product markets within which to analyze Leegin's conduct. The first is the "wholesale sale of brand-name women's accessories to independent retailers." SAC ¶ 24.  The second is the "retail market for Brighton's women's accessories."  SAC ¶ 24. Plaintiff does not discuss these product markets in relation to other brands.  In fact, the complaint does not name a single other brand or product.

Plaintiff does not allege that Brighton has a large share of its proposed wholesale market (it of course would have 100% of a Brighton-only market if such a market was legally cognizable).  Instead, plaintiff's allegations of market power rest on a notion of "dominance" as a supplier (SAC ¶ 18) and the fact that its products are "highly differentiated."  SAC ¶ 17. Plaintiff alleges a relevant geographic market of the greater Dallas, Texas area.  SAC ¶ 24.

###    D.    The Alleged Anti-Competitive Effect

Plaintiff alleges that Brighton's conduct has resulted in higher prices for Brighton's products and that it was hindered in its ability to obtain competing products.  SAC ¶ 27. Plaintiff's only other allegation of anti-competitive effect is that consumers pay more for brand-

name women's accessories.  SAC ¶ 32.  But Plaintiff does not name any other women's

accessories brands or support the allegation with anything but conclusory allegations that the

prices have been raised.

## III.  ARGUMENT

### A.  Plaintiff's Rule of Reason Allegations Fail

#### 1.  Plaintiff Has Failed to Allege a Tenable Relevant Market

Plaintiff's complaint fails as a matter of law, because it has not alleged that Leegin's

"activities, on balance, adversely affected competition in the appropriate product and geographic

markets."  *Apani Southwest*, 300 F.3d at 627 (citation omitted).  The first step in any rule of

reason case is determining the relevant market.  *Id*.  This exercise is not academic.  A rule of

reason analysis examines whether the restraint alleged – here, fixing retail prices – has had an

anticompetitive effect within a relevant market.  The relevant market definition is critical

because it is only by reference to a defined market that one can evaluate the defendant's market

power and the possible anticompetitive effect of the restraint.  *Jayco Systems, Inc. v. Savin*

*Business Machines Corp.*, 777 F.2d 306 (5th Cir. 1985).  A relevant market consists of two

components, a product market and a geographic market.  **A relevant product market must**

**include the line of goods or services reasonably interchangeable in use.**  *United States v. E.I.*

*duPont deNemours & Co.*, 351 U.S. 377, 404 (1954) (emphasis added).  The relevant geographic

market is "the area of effective competition ... in which the seller operates, and to which the

purchaser can practicably turn for supplies."  *Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S.

320, 327 (1961).  Where "the relevant market is legally insufficient . . . a motion to dismiss may

be granted."  *Apani Southwest, Inc.*, 300 F.3d at 627.

Plaintiff has defined two narrow product markets, neither of which is tenable.  In

addition, its proposed geographic market does not conform to the realities it faces as a retailer.

a.     **Relevant Market of Brighton Branded Products Fails**

Plaintiff's proposed market of "the retail market for Brighton women's accessories" fails because countless brands are "reasonably interchangeable in use" with Brighton's products. Differentiated products are common in our economy, yet courts have regularly held that a single brand, no matter how distinctive, no matter how unique, cannot be its own brand. *Little Caesar Enterprises, Inc. v. Smith*, 34 F. Supp. 2d 459, 477 n.30 (E.D. Mich. 1998) (collecting cases). "Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market." *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1282 (10th Cir. 2004); *see also Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 488 (5th Cir. 1984) (holding that "absent exceptional market conditions, one brand in a market of competing brands cannot constitute a relevant product market"); *Apple, Inc. v. Psystar Corp.*, --- F.Supp.2d ----, 2008 WL 4943034 (N.D.Cal. 2008) (holding that the Mac operating system did not constitute a single-brand product market).

Plaintiff attempts to support this market by alleging that Brighton is "unique" and that many consumers "do not consider other accessories suitable substitutes for their use of Brighton-brand products." SAC ¶ 25. Plaintiff also alleges that Brighton-brand products are "distinct." SAC ¶ 26. As this Court had the opportunity to observe in the first trial, Brighton products are no more unique or distinct than many branded products. It is common knowledge that many other manufacturers produce and sell each of the different types of Brighton products. Plaintiff's allegations suggesting otherwise amount to no more than "labels and conclusions" that "will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

The Court in Tennessee had little trouble rejecting these same allegations.[2]

---

[2] The court in Tennessee was in fact faced with these same allegations. Paragraph 25 of the Second Amended Complaint is word-for-word the same as Paragraph 39 of the complaint in

> It is quite clear that plaintiffs cannot plausibly allege that other clothing accessories such as handbags, leather belts, shoes, fragrances, wallets, watches, jewelry and sunglasses are not reasonably interchangeable [with Brighton products].  No amount of discovery would dispel such an obvious notion.  If the plaintiffs were correct, as defendant argues, a whole host of products which enjoy brand loyalty, such Pepsi, Coca Cola, Rolex watches, fast foods, Chevrolet, Ford, Chrysler, Volkswagen, and Dodge automobiles, office supplies, ice cream, and the like would all become relevant product markets for antitrust purposes.  Plaintiffs ignore, however, volumes of case law which reject such a conclusion.

*Spahr*, 2008 WL 3914461, at *9.  Brighton-brand products, no matter how unique, simply are not a relevant antitrust product market.

> b.    **Plaintiff's Alleged Market of "Wholesale Sale of Brand-Name Women's Accessories to Independent Retailers" Fails**

Plaintiff's alternative product market fares no better.  This gerrymandered product market fails from the 50,000 foot level because it obviously excludes products reasonably interchangeable with Brighton's products, and, in addition, it fails in each of its individual components:  "[1] the wholesale sale of [2] brand-name [3] women's accessories to [4] independent retailers." SAC ¶ 24.

***"Wholesale Sale"***  First it fails because PSKS has offered no allegations that justify limiting the market to the "wholesale" level.  The Supreme Court in *Leegin* instructed courts to analyze resale price maintenance agreements in terms of their impact on consumers, just as in other vertical restraint cases.  *Leegin* 127 S.Ct. at 2715-16 (discussing the similarities of RPM with other vertical restraints and the impacts on consumers).  Courts in other vertical restraint cases usually define the relevant market in terms of the product itself without regard to the distribution level.  *See, e.g., Assam Drug Co. Inc. v. Miller Brewing Co., Inc.*, 798 F.2d 311 (8th Cir. 1986) (relevant market was the "interbrand beer market" not limited to the wholesale Tennessee.

market); *R.D. Imports Ryno Indus. v. Mazda Distrib.*, 807 F.2d 1222, 1225 (5th Cir. 1987)

(relevant market was cars, foreign and domestic, that consumers viewed as substitutes with no

limitation to wholesale market).  PSKS has offered no facts that would justify breaking with the

long line of authorities evaluating vertical restraints in terms of their impact on consumers.  Nor

could it.  PSKS has alleged a restraint on the retail prices of Brighton's goods.  There is no

reason why the impact of that restraint should be limited to an analysis at the wholesale level.

　　　*"**Brand-Name**"*  Second, plaintiff's limitation to "brand-name" products is wrong

because it is conclusory and unsupported by any facts.  The Fifth Circuit, following *duPont*,

requires plaintiffs to define their relevant market with reference to the reasonable

interchangeability in use:

> [w]here the plaintiff fails to define its proposed relevant market
> with reference to the rule of reasonable interchangeability and
> cross-elasticity of demand, or alleges a proposed relevant market
> that clearly does not encompass all interchangeable substitute
> products even when all factual inferences are granted in plaintiff's
> favor, the relevant market is legally insufficient, and a motion to
> dismiss may be granted.

*Apani Southwest, Inc.*, 300 F.3d at 628.  Here plaintiff has not even mentioned other brands or

other products, let alone made allegations with reference to the interchangeability of "brand-

name" women's accessories as compared to non-brand-name women's accessories.  Therefore,

the proposed product market fails on this ground as well.  "Because Defendant's counterclaim

fails to make any factual allegations to the effect that discount cigarettes and branded cigarette

are not interchangeable, Defendants have submitted an inadequate pleading."  *Star Tobacco, Inc.*

*v. Darilek*, 298 F. Supp. 2d 436, 446 (E.D. Tex. 2003) (granting motion to dismiss for failure to

define a relevant market); *see also Murrow Furniture Galleries, Inc. v. Thomasville Furniture*

*Indust.*, 889 F.2d 524, 529 (4th Cir. 1989) ("Courts have repeatedly rejected efforts to define

markets by price variances or product quality variances.  Such distinctions are economically

meaningless where the differences are actually a *spectrum* of price and quality differences.")
(internal citations and quotations omitted).

**_"Women's accessories"_**   Third, "women's accessories" is not an appropriate product
market because it groups together products that are not interchangeable with each other.  As the
Court in Tennessee noted, "picture frames do not compete with women's handbags and shoes do
not compete with jewelry."  *Spahr*, 2008 WL 3914461, at *9 n. 3.  Courts sometimes recognize
the existence of "cluster markets."  A cluster market can only exist, however, where "the cluster
of products is *itself* an object of consumer demand."  *Green County Food Market, Inc., v.
Bottling Group, LLC,* 371 F.3d 1275, 1284 (10th Cir. 2004) (holding that different beverages
were not a "cluster" market because there were no allegations that consumers viewed the group
of beverages itself as a product).

In addition, "women's accessories" is simply too vague to constitute a market.  Brighton
sells everything from umbrellas to perfume to luggage to shoes.  Does the market include all of
these products?  Only some of them?  Without further allegations defining the market, it is
"insufficient and fatally vague" and therefore properly dismissed.  *Cupp v. Alberto-Culver USA,
Inc.,* 310 F. Supp. 2d 963, 97 (W.D. Tenn. 2004) (rejecting market definition in part because "the
description 'hair care products' is itself so vague that it leaves the Court at a loss as to what sort
of products to include").

**_"Independent Retailers"_**   Finally, this product market fails because PSKS offers no
allegations that explain who or what would constitute an "independent retailer" nor does it offer
allegations that would justify limiting the relevant market to a subset of retailers.  The term
"independent retailers" is undefined.  Does "independent" mean a retailer that is separate from

Brighton, in other words, all retailers that are not owned by Leegin?[3]  Or is "independent" meant to suggest a store, like PSKS, that is not a department store?  If it is the latter, what type of store qualifies as an "independent" retailer?  Is it only stores like PSKS that have one location?  What about stores that have three or four locations?  The lack of specificity leaves the relevant market too vague to be a tenable definition.  *Cupp*, 310 F. Supp. 2d 963.

Additionally, to the extent that "independent retailers" is intended to describe some subset of retailers, such as stores like PSKS, the complaint fails to allege why it should be so limited.  Why wouldn't "independent" retailers compete with other types of retailers such as chains like Ann Taylor or department stores like Nordstrom?  Again, the Fifth Circuit requires plaintiffs to define their market with reference to the rule of reasonable interchangeability. *Apani Southwest, Inc.*, 300 F.3d at 628.  Plaintiff has made no allegations about the interchangeability or lack thereof between one subset of retailers and other retailers selling exactly the same products.

c.      **Plaintiff's Geographic Market Also Fails**

Plaintiff has not alleged facts to support a relevant geographic market for its alleged product market at the wholesale level.[4]  Plaintiff alleges that it purchases most of its products from the Dallas Market (SAC ¶ 7) and alleges a product market of the greater Dallas area.  SAC ¶ 24.  But plaintiff is confusing an "industry market" with an "antitrust market."  The Dallas Market is a place where distributors sell their products at periodic shows.  SAC ¶ 7.  The relevant geographic market is "the area of effective competition ... in which the seller operates, and to

---

[3] Such a reading is supported by plaintiff's allegation that Brighton "sells to independent retailers directly."  SAC ¶ 8.  That suggest that "independent retailer" includes all stores to which Brighton sells.  Brighton sells to Nordstrom and other department stores in addition to stores like PSKS.

[4] Defendant does not concede that this geographic market is appropriate for the retail sale market; however, it is not moving to dismiss on these grounds.

which the purchaser can practically turn for supplies." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).  Even under PSKS's irrelevant wholesale product market, the question is where can PSKS turn to for supplies.  There is no factual allegation that would support limiting this geographic area to Dallas.  The complaint itself demonstrates that:  Leegin is a California corporation.  *Star Tobacco*, 298 F. Supp. 2d at 446.  ("Though the court has insufficient evidence to define it with any precision, the court would have to assume that the market extends at least to Virginia, where Plaintiff Star manufacturers the cigarettes that it sells in Texas.").  Accordingly, a relevant geographic market limited to the Dallas area fails as a matter of law.

### 2.       Plaintiff's Failure to Allege Anticompetitive Effects Provides Further Reason for Dismissal

It is axiomatic that the antitrust laws "were enacted for the protection of competition, not competitors."  *Atlantic Richfield Co. v. U.S.A. Petroleum Co.*, 495 U.S. 328, 338 (1990) (internal quotations marks and citation omitted).  "The failure to allege injury to competition is a proper ground for dismissal by judgment on the pleadings."  *Tanaka v. Univ. of Southern California*, 252 F.3d 1059, 1064 (9th Cir. 2001) (citation and quotation marks omitted).  As the Supreme Court has explained in this very case, resale price maintenance is generally procompetitive, not anticompetitive.  *See, e.g., Leegin*, 127 S.Ct. at 2715-16.  It follows that Plaintiff must, at this stage of the remand proceeding, allege facts to support an inference of anticompetitive effects caused by Leegin's resale price maintenance program.  Plaintiff has failed to do so.

### a.       Plaintiff Has Failed To Allege Facts Supporting An Inference Of Market Power

Even if plaintiffs had alleged a tenable relevant market, it still has not alleged facts suggesting that Brighton has market power within those markets.  As the Supreme Court explained, "[t]hat a dominant manufacturer … can abuse resale price maintenance for

anticompetitive purposes may not be a serious concern unless the relevant entity has market

power." *Leegin*, 127 S. Ct. at 2720.  The very concept of a rule of reason contemplates "an

inquiry into market power and market structure designed to assess a restraint's actual effects."

*Id*. at 2713 (internal brackets removed and citation omitted).  Accordingly, "[p]roof of the

antitrust defendant's 'substantial' market power should be a preliminary hurdle in all restricted

distributor (vertical restraint) cases." *Futurevision Cable Systems*, 789 F. Supp. at 769 (citing

*Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292, 298 (5th Cir. 1981)).  Failure to allege

market power is grounds for dismissal, for the simple reason that "vertical restraints by firms

which lack market power … cannot be anticompetitive at the interbrand level."  *Id*. (internal

quotes and brackets omitted).  Without market power, a manufacturer that raises prices would

simply see its sales decline as consumers shift to substitute products sold by rival manufacturers,

and no harm to competition results.

It is not sufficient for Plaintiff to conclusorily allege that Leegin is "dominant."  *E.g.*,

SAC ¶ 18.  The only facts – as opposed to conclusory allegations – PSKS pleads to support that

allegation is that Leegin occupies the largest showroom at the Dallas market; that Leegin is

viewed as the preferred supplier because of the selection and nature of its products; and that

Leegin is the largest supplier of women's accessories to independent retailers.  *Id*.  But without

allegations describing Leegin's market share or the number of competitors, the mere allegation

that Leegin is the largest among an unknown number of competitors does not give rise to an

inference of market power.

A similar allegation was rejected as inadequate by the Seventh Circuit in *Sheridan v.

Marathon Petroleum Co., LLC*, 530 F.3d 590, 594-95 (7th Cir. 2008) (Posner, J).  There, the

complaint alleged that the defendant was the "fourth-largest United States-based integrated oil

and gas company." *Id*.  The court dismissed the complaint, because no "market share statistics for Marathon either locally or nationally are given." *Id*.  The court also observed that, based on official government statistics, being "fourth largest" translated into only a 4.3% share of U.S. gasoline sales, and "[t]hat is no one's idea of market power." *Id*.  Likewise, stating that Leegin has the largest showroom or is an amorphously termed "preferred provider," without more, says nothing about whether Leegin's market power or lack thereof.  *See also Futurevision Cable*, 789 F. Supp. at 769 (dismissing complaint where plaintiff "fails to allege a specific figure representing the percentage of market share" held by defendants).

Plaintiff's other allegations – that Brighton enforced its trademarks, required retailers to carry minimum levels of inventory, refused to sell to retailers that carry competing product lines, and discouraged traffic to other retailers – describe business practices, not Leegin's share of the market or Leegin's position vis-à-vis its competitors.  SAC ¶ 19.  These are simply irrelevant to the market power that plaintiff must allege to state a violation under the rule of reason.  *See, e.g., Marathon Petroleum*, 530 F.3d at 595 ("A trademark does not confer a monopoly; all it does is prevent a competitor from attaching the same name to his product."); *American Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc.*, 108 F.3d 1147, 1151 9th Cir. 1997) (a good reputation for providing high quality service does not confer market power); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 443 (3d Cir. 1997) (dismissing complaint where pizza franchiser's ability to require minimum purchases of dough from franchisees stemmed from contract rather than market power).  PSKS does not purport to base its claims on any wrongful acquisition or maintenance of market power through these practices, assuming that any of them could even support such a claim.

b.    **It Is Not Enough To Allege Higher Prices For Brighton Products**

Even if Plaintiff had adequately pleaded market power, that would not be sufficient without "some other ground for believing that the challenged behavior could harm competition in the market, such as the inherent anticompetitive nature of the defendant's behavior or the structure of the interbrand market." *Spanish Broadcasting Sys. v. Clear Channel*, 376 F.3d 1065, 1073 (11th Cir. 2004) (quoting *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 97 (2d Cir. 1998)).

Much of Plaintiff's allegations on anticompetitive effects relate to higher prices for Brighton brand products.  SAC ¶ 27.  But plaintiff "is mistaken in relying on pricing effects absent a further showing of anticompetitive conduct." *Leegin*, 127 S. Ct. at 2718.  The Supreme Court made clear that prices alone "do not necessarily tell us anything about the welfare effects of resale price maintenance because the results are generally consistent with both procompetitive and anticompetitive theories." *Id.* (citation and internal brackets omitted).

Indeed, the Supreme Court criticized Plaintiff's reliance on intrabrand pricing effects for "overlook[ing] that, in general, the interests of manufacturers and consumers are aligned with respect to retailer profit margins." *Id.*  As the Supreme Court further explained:

> A manufacturer has no incentive to compensate retailers with unjustified margins.  The retailers, not the manufacturer, gain from higher retail prices.  The manufacturer often loses; interbrand competition reduces its competitiveness and market share because consumers will substitute a different brand of the same product. As a general matter, therefore, a single manufacturer will desire to set minimum resale prices only if the increase in demand resulting from enhanced service … will more than offset a negative impact on demand of a higher retail price.

*Id.* (citations and quotation marks omitted).  In other words, a manufacturer has no reason to practice resale price maintenance unless higher prices for its products, and the enhanced services

that higher retail margins enable retailers to provide, would actually help it compete against other brands.  That enhances consumer choice and is procompetitive, not anticompetitive.  It follows that alleging higher prices for Brighton brand products or reduced competition within the Brighton brand, without more, is insufficient to state an antitrust violation under *Leegin*.  *Spahr*, 2008 WL 3914461, at *11-12 (dismissing complaint for relying solely on "higher prices for Brighton products" to allege anticompetitive effects).

Plaintiff makes no other factual allegations of actual injury to competition, only that "Plaintiff was hindered in its ability to acquire competing products."  SAC ¶ 27.  But PSKS does not explain how it was "hindered," or how the hindrance was caused by the challenged RPM program, or, most importantly, how that hindrance actually harmed *competition*, rather than just PSKS.  *See Spanish Broadcasting Sys. v. Clear Channel*, 376 F.3d at 1072 (dismissing complaint where "[n]one of these allegations assert damage to competition itself rather than damage to [plaintiff]").

### c.   Plaintiffs Have Pleaded No Facts To Support Any Of The Anticompetitive Scenarios Described By The Supreme Court.

The Supreme Court explained that resale price maintenance may constitute an antitrust violation under four limited circumstances: where it was instituted to facilitate (1) a "manufacturer cartel"; (2) "cartels at the retailer level"; (3) a "dominant retailer"; and (4) a manufacturer with "market power [who] might use resale price maintenance to give retailers reason not to sell the products of smaller rivals or new entrants."  *Leegin*, 127 S. Ct. at 2716-17. In each of these scenarios, a RPM program might plausibly be instituted as a means of limiting *interbrand* competition, among either manufacturers or retailers.  But Plaintiff does not allege facts supporting an inference that any of these scenarios exist.

Plaintiff has not tried to allege scenario (1) or (3), a manufacturers' cartel or a dominant

retailer.  Plaintiff has also failed to allege scenario (4).  Plaintiff's market power allegations are insufficient as a matter of law, as already discussed; and even if Plaintiff has adequately alleged market power as to Leegin, the pleading simply alleges no *facts* to support an inference that Leegin tried to elbow out "smaller rivals or new entrants."  *Id*.  The complaint does not identify any of Leegin's competitors, or any retailers other than PSKS, while utterly failing to explain how the resale maintenance program might encourage retailers to not sell competing products.

Nor has Plaintiff pleaded sufficient facts to support an inference, under scenario (2), that the challenged resale price maintenance program was established on behalf of a retailer cartel.  The complaint acknowledges that Leegin *itself* established the challenged resale price maintenance program.  SAC ¶ 9 (Leegin "solicits agreements from retailers not to discount Brighton products").  While Plaintiff alleges that changes to the resale price maintenance program were made at the "insistence" of retailers "*after* Leegin introduced its 'Retail Pricing and Promotion Policy'" (SAC ¶ 13) (emphasis added), nothing in the complaint suggests that the original purpose of the program was to facilitate a retailer cartel, or that Leegin initially created the program due to pressure from retailers.  That is simply insufficient to state a rule of reason claim under the Supreme Court's mandate, because "if a manufacturer adopted the policy independent of retailer pressure, the restraint is less likely to promote anticompetitive conduct."  *Leegin*, 127 S. Ct. 2719.

Moreover, Plaintiff's attempt to allege a retailer cartel falls far short of the rigorous pleading standards set by *Twombly*.  Allegations of conspiracy in an antitrust case must contain more than "labels and conclusions."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  A complaint must be dismissed if it "mentioned no specific time, place, or person involved in the alleged conspiracies."  *Id*. at 1971 n.10.  The complaint alleges that a meeting

involving Leegin and its "most successful retailers" took place in Hawaii in January 2003, and that a "consensus of retailers" was reached to approve an exception to the retail pricing policy. SAC ¶ 14.  However, none of the retailers is identified.  Moreover, the alleged "consensus" pertains only to a minor exception to the policy, not the policy itself which had been in place for five years at that time.  Even as to that exception, there is no allegation that Leegin did not make the ultimate decision based on its own view of what was best for its products.  There is nothing improper or illegal about a manufacturer seeking the advice of its most successful retailers.  *See Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 762 (1984) ("A manufacturer and its distributors have legitimate reasons to exchange information about the prices and the reception their its products in the market.").  Given that the complaint alleges that Leegin's retail price policy has been in effect since the 1990s and that the "Heart Store" program started in 1998, it could not possibly have been adopted at the behest of retailers at a meeting held in 2003.

**B.** **Plaintiff Cannot and, In Any Event, Has Not, Pled a Horizontal Conspiracy**

**1.** **The Mandate Rule Bars PSKS From Pleading a Horizontal Conspiracy**

Although this case was tried solely under a vertical RPM theory, PSKS now attempts to get around the rule of reason—the very standard the Supreme Court has held would govern this remand proceeding—by pleading a horizontal price-fixing conspiracy.  SAC ¶ 15.  In essence, PSKS would have this Court again apply the per se rule, not the rule of reason mandated by the Supreme Court.  PSKS's maneuver runs headlong into the mandate rule, which "bars litigation of issues decided by the district court but foregone on appeal or **otherwise waived**, for example because they were not raised in the district court."  *U.S. v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (emphasis added); *see also Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (party foreclosed by mandate rule from raising on remand an issue it did

18

not raise in earlier proceedings, either in trial court or on appeal).  PSKS never raised horizontal

allegations in this Court before appeal, and cannot do so now.  Indeed, the Supreme Court itself

has already rejected PSKS's last-minute horizontal theory as waived:

> Noting that Leegin's president has an ownership interest in retail
> stores that sell Brighton, respondent argues that Leegin
> participated in an unlawful horizontal cartel with competing
> retailers.  *Respondent did not make this argument in the lower
> courts*, and we do not consider it now.

127 S.Ct. at 2725 (emphasis added).

The seminal vertical restraint case of *Continental T.V., Inc. v. GTE Sylvania, Inc.* is

instructive.  It was originally tried under a per se theory, but was reversed and remanded by the

Supreme Court for decision under the rule of reason.  433 U.S. 36 (1977).  On remand, the

plaintiff tried to plead a horizontal conspiracy, but was barred from doing so by the trial court.

*Continental T.V., Inc. v. GTE Sylvania Inc.*, 461 F. Supp. 1046, 1051-52 (N.D. Cal. 1978), *aff'd*

694 F.2d 1132 (9th Cir. 1982).  As the court held, "[s]uch a theory of Section 1 liability has

never before been asserted by plaintiff and it cannot properly do so now."  *Id*.  That same

reasoning fully applies here. It was plaintiff's choice to plead and try a vertical case; now that the

Supreme Court has vacated the original judgment, PSKS cannot turn around and evade the

Supreme Court's mandate by making horizontal allegations it had never before raised.

## 2.   Dual Distribution Is Evaluated Under the Rule of Reason

Even if the mandate rule did not bar these allegations, Plaintiff's horizontal allegations

fail as a matter of law.  Courts are clear that systems like Leegin's – where a manufacturer is

both a wholesale distributor and itself a retail distributor, so-called dual distribution systems –

are analyzed "in the same manner" as any other vertical arrangement.  *Red Diamond Supply, Inc.*

*v. Liquid Carbonic Corp.*, 637 F.2d 1001, 1004-1007 (5th Cir. 1981).  Since the manufacturer is

the source of the restriction, the economic logic is identical to that for "pure" vertical restrictions

– the manufacturer will only impose the restrictions if it believes that they will further the interbrand competitiveness of its products.  The fact that the manufacturer also owns some retail stores does not change the fact that interbrand competition will discipline any restrictions that do not ultimately benefit consumers.  This is a well established principle – *eight other circuits* who have considered the issue have all reached the same result.[5]  As the court in Tennessee held, "because Leegin operates at the market level as both a manufacturer and a distributor, it is involved in a dual distribution situation . . . and the appropriate standard is the rule of reason." *Spahr*, 2008 WL 3914461 at *7.

### C.    Plaintiff's State Law Claims Were Abandoned

PSKS alleges that Brighton also violated Texas Business and Commerce Code § 15.05 *et seq.*  SAC ¶ 34.  PSKS cannot now bring this cause of action however because it has already abandoned those claims before the previous trial.  *PSKS v. Leegin*, Civil Action No. 2:03-CV-107 (E.D. Tex. Mar. 26, 2004).  Having failed to submit those claims to the jury when it had the ability to do so, the mandate rule now forbids PSKS from asserting those claims on remand. *U.S. v. Lee*, 358 F.3d at 321.

---

[5] *See, e.g., AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006) (agreement involving dual distributor arrangement remained "vertical" and analyzed under the rule of reason); *Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) (same); *Glacier Optical, Inc. v. Optique du Monde*, 46 F.3d 1141 (9th Cir. 1995) (not for publication) (same); *Smalley & Co. v. Emerson & Cuming, Inc.*, 13 F.3d 366, 368 (10th Cir. 1993) (same); *Hampton Audio Electronics, Inc. v. Contel Cellular, Inc.*, 966 F.2d 1442 (4th Cir. 1992), as amended, (Aug. 6, 1992) (same); *Ill. Corporate Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 753 (7th Cir. 1989) (same); *International Logistics Group, Ltd. V. Chrysler Corp.*, 884 F.2d 904, 906 (6th Cir. 1989) (same); *Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215, 1230, 92 A.L.R. Fed. 387 (8th Cir. 1987), (same).

## IV.     CONCLUSION

For all of the foregoing reasons, Leegin respectfully requests an order from this Court

dismissing Plaintiff's Second Amended Complaint with prejudice.

January 20, 2009                                                Respectfully submitted,


                                                  /s/ Tyler A. Baker_____
                                                 Tyler A. Baker
                                                 (Texas State Bar No. 01595600)
                                                 (California State Bar No. 233403)
                                                 **FENWICK & WEST LLP**
                                                 801 California Street
                                                 Mountain View, CA  94041
                                                 Telephone:  (650) 955-8500
                                                 Facsimile:   (650) 983-5200

                                                 Otis W. Carroll
                                                 (Texas State Bar No. 03895700)
                                                 **IRELAND, CARROLL & KELLEY, P.C.**
                                                 6101 South Broadway, Suite 500
                                                 Tyler, TX  75703
                                                 Telephone:  (903) 561-1600
                                                 Facsimile:  (903) 581-1071

                                                 *Attorneys for Defendant*
                                                 Leegin Creative Leather Products, Inc.

Of Counsel:

Jeffrey I. Weinberger (SBN 56214)
Kate K. Anderson (SBN 212141)
Jeffrey Y. Wu (SBN 248784)
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Rohit K. Singla (SBN 213057)
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that in this 20th day of January 2009, I electronically filed the foregoing **Defendant's Motion to Dismiss** with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this manner.

/s/ Tyler A. Baker
Tyler A. Baker