IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PSKS, INC. d/b/a KAY'S KLOSET, ET AL. § | |
| § | |
| *Plaintiffs.* § | |
| § CV | 2:03 CV 107 (TJW) |
| v. § | |
| § | |
| LEEGIN CREATIVE LEATHER § | |
| PRODUCTS, INC. § | |
| § | |
| *Defendant.* § | |
| § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Leegin Creative Leather Products, Inc.'s ("Leegin") Motion to Dismiss (Dkt. No. 152). On March 12, 2009, the court heard oral arguments on the Motion. The court has carefully considered the parties' submissions and arguments of counsel. The court GRANTS Leegin's Motion for the following reasons.

### I. BACKGROUND

In *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 127 S.Ct. 2705 (2007), the Supreme Court reversed the jury verdict in plaintiff's favor in this case. In doing so, the Supreme Court changed the standard by which to judge price fixing agreements between manufacturers and the entities to whom they sell (vertical price fixing agreements). The Supreme Court announced that a "rule of reason" standard should apply to vertical price fixing agreements, rather than the *per se* standard that was applied by this court. The Supreme Court remanded the case to this court to apply the "rule of reason" at retrial. This court granted the PSKS leave to file a second amended complaint (SAC) and gave the parties a briefing schedule

for any Motion to Dismiss. The plaintiff has filed its amended complaint, and Leegin has filed its Motion to Dismiss.

## II. LEGAL STANDARD

The legal standard for dismissing claims under FED. R. CIV. P. 12 ("Rule 12") is well established. Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the plaintiff's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007). The factual allegations must be sufficient to raise a "right to relief above the speculative level." *Id.* at 1965. The Court must assume that the allegations in the complaint are true. *See id*; *Neitzke v. Williams,* 490 U.S. 319 (1989). "What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 328. The "issue is not whether [the plaintiffs] will ultimately prevail, but whether [they are] entitled to offer evidence to support [their] claim." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

## III. ANALYSIS

Leegin challenges PSKS's allegations as being insufficient to allege a rule of reason antitrust case. Leegin argues that the two relevant product markets PSKS attempts to define in its SAC are untenable under antitrust law. Further, Leegin argues PSKS has not alleged facts demonstrating that Brighton has market power in the purported relevant product markets. Brighton's market power in the relevant product markets is necessary for the alleged price fixing

agreement to have the requisite anticompetitive effect to be illegal in a rule of reason case. PSKS responds that it has in fact pleaded sufficiently, and the Supreme Court's opinion in *Leegin* did not require market power for a showing of an anticompetitive effect in a rule of reason analysis for vertical price fixing agreements.

In an attempt to bootstrap its case into a *per se* illegality case, PSKS added allegations in its SAC to support horizontal price-fixing and a retailer cartel. PSKS alleges that because the manufacturer in this case is also a distributor and retailer, the pricing agreement is horizontal as well as vertical. Additionally, PSKS alleges the conduct amounts to a classic hub and spoke conspiracy. Leegin makes two arguments for dismissing PSKS's horizontal allegations from its SAC. First, Leegin argues that because PSKS did not originally proceed on a horizontal theory, it is precluded from doing so now. Second, Leegin argues, PSKS's horizontal restraints theories fail as a matter of law.

### A. Relevant Product and Geographic Market

The first step in a rule of reason analysis is determining the relevant market. *Apani Southwest* Inc. *v. Coca-Cola Enterprises Inc.*, 300 F.3d 620, 627 (5th Cir. 2002). "Proof that the defendant's activities, on balance, adversely affected competition in the appropriate product and geographic markets is essential to recovery under the rule of reason." *Hornsby Oil Co. V. Champion Spark Plug Co.*, 714 F.2d 1384, 1392 (5th Cir. 1983). A relevant product market includes the line of goods or services reasonably interchangeable in use. *United States v. E.I. duPont deNemours & Co.*, 351 U.S. 377, 396 (1956). The relevant geographic market "is the area of effective competition . . . in which the seller operates, and to which the purchaser can practicably turn for supplies." *Tampa Elect. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327

3

(1961). The Fifth Circuit requires plaintiffs to define their market with reference to the rule of reasonable interchangeability. *Apani*, 300 F.3d at 628. Where "the relevant market is legally insufficient . . . a motion to dismiss may be granted." *Id.* at 627.

### 1. *Relevant Product market*

A relevant product market includes the line of goods or services reasonably interchangeable in use. *United States v. E.I. duPont deNemours & Co.*, 351 U.S. at 393. "Determination of the competitive market for commodities depends on how different from one another are the offered commodities in character or use, how far buyers will go to substitute one commodity for one another." *Id.* "[I]t is the use or uses to which the commodity is put that control." *Id.* at 396.

PSKS alleges two product markets in its SAC. The first is "retail market for Brighton's women's accessories." SAC ¶ 24. The second is the "wholesale sale of brand-name women's accessories to independent retailers." SAC ¶ 24. Leegin argues that neither market is tenable under current law.

#### i. "Retail market for Brighton's women's accessories"

Leegin first argues that the market definition "retail market for Brighton's women's accessories" fails because countless brands are "reasonably interchangeable in use" with Brighton's products. Dfts. MTD at 7. Indeed, courts have regularly held that a single brand, no matter how distinctive or unique, cannot be its own market. *Little Ceasar Enterprises, Inc. v. Smith*, 34 F.Supp. 2d 459, 477 n.30 (E.D. Mich. 1998) (collecting cases). "Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market." *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1282 (10th

Cir. 2004). The Fifth Circuit has held that "absent exceptional market conditions, one brand in a market of competing brands cannot constitute a relevant product market. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d. 480, 488 (5th Cir. 1984)

PSKS attempts to circumvent the law by arguing that the SAC alleges special factors that could make the "retail market for Brighton's women's accessories" a unique submarket that should be considered separately for antitrust purposes. Pls. Reply at 8. Indeed, "antitrust law recognizes . . . economically significant submarkets . . . which themselves constitute relevant product markets." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.* 732 F.2d 480, 487-88 (5th Cir. 1984). PSKS points out that "[t]he fact finder may determine a submarket exists by 'examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Id.* (citing *Brown Shoe v. U.S.,* 370 U.S. 294, 325 (1962)).

PSKS, however, has failed to allege a tenable dominant market to its alleged submarket. PSKS attempts to argue there can be some submarket without a tenable dominant market. Further, PSKS ignores that a submarket is still a "market." While PSKS may have pleaded facts sufficient to define a submarket, that alone will not get PSKS past the clear law that a single brand cannot be its own market. *See id.* There is no law supporting PSKS's apparent position that submarkets are exempt from the law requiring a market to constitute more than a single brand. "Retail market for Brighton's women's accessories," therefore, is not a tenable product market under the law.

5

### ii. "Wholesale sale of brand-name women's accessories to independent retailers"

Next, PSKS argues that "wholesale sale of brand-name women's accessories to independent retailers" is a relevant product market. Leegin argues that this alternative product market fails because it excludes products reasonably interchangeable with Brighton's products. Leegin breaks down into different components what it calls the "gerrymandered" product market: 1) wholesale sale, 2) brand-name 3) women's accessories, and 4) independent retailers.

First, as Leegin points out, "wholesale sale" is inappropriate because it does not focus on how any agreement impacts consumers. Relevant markets must be defined in terms of the product itself without regard to the distribution level. *See*, *e.g., Assam Drug Co. Inc. v. Miller Brewing Co., Inc.*, 798 F.2d 311 (8th Cir. 1986) (relevant market was the "interbrand beer market" not limited to the wholesale market); *R.D. Imports Ryno Indus. v. Maza Distrib.* 807 F.2d 1222, 1225 (5th Cir. 1987) (relevant market was cars, foreign and domestic, that consumers viewed as substitutes with no limitation to wholesale market).

PSKS attempts to circumvent this law by arguing the Supreme Court distinguished the "effect that this type of constraint poses for manufacturer cartels." For example, PSKS argues "by imposing a fixed margin, manufacturers can easily police competing manufacturer sales and more easily fix wholesale prices. . . The economic injury of this activity falls not only on the consumer, who is charged more than a competitive price for the goods, but also on those dealers purchasing their goods at wholesale." Dfts. Resp. at 5. However, PSKS has failed to define the relevant *market* in terms of the product itself and not the distribution level of the product. This must be done without regard to how the wholesale market is affected. Therefore, "wholesale

market," adds nothing to PSKS's alternative product market.

Second, Leegin argues that including "brand name" in the product market definition is wrong, because it is consclusory and unsupported by any facts. Leegin cites to *Star Tobacco, Inc. v. Darilek*, 298 F.Supp 2d 436, 446 (E.D. Tex 2003) granting a Motion to Dismiss because the plaintiff had failed to allege facts supporting "brand name" and "discount" or "generic" cigarettes were not interchangeable. The *Star Tabacco* court held "[b]ecause Defendant's counterclaim fail[ed] to make any factual allegations to the effect that discount cigarettes and branded cigarettes are not interchangeable, Defendants have submitted an inadequate pleading." *Id.*

PSKS responds that including "brand name" does add something to the purported product market. *See Babyage.com Inc. v. Toys "R" Us, Inc.*, 558 F.Supp.2d 575 (E.D.Pa. 2008) (allowing products to be defined by "*high-end* baby and juvenile strollers"). *Babyage* is distinguishable from the case at bar, however. In *Babyage*, the plaintiff had pleaded why *"high-end"* baby strollers were not interchangeable with other types of strollers. *Id.* Here, PSKS fails to allege facts that support "brand names" are important to interchangeability in this case. PSKS fails to allege facts that would support a showing that consumers in the market for "brand name" women's accessories, whatever those accessories are, may only turn to other brand-name products. All of PSKS's facts are couched in terms of why the "Brighton" brand is unique and high end. As already discussed, a single brand can not be its own market. *See Domed Stadium,* 732 F.2d at 487-88. It is plausible that PSKS would be able to amend its complaint to allege facts necessary to support an allegation that "brand name" accessories are important to its product definition. However, granting leave to do so would be in vain, because alleging such

7

facts would not be enough to salvage the case in light of the its other deficiencies.

"Women's Accessories," Leegin argues, is not an appropriate product market because it groups together products that are not interchangeable with each other. In a sister case to this one, Judge Greer in the Eastern District of Tennessee held "picture frames do not compete with women's handbags and shoes do not compete with jewelry." *Spahr v. Leegin*, 2008 WL 3914461, at *9 n.3. This court agrees. "Women's accessories" is too broad and vague to constitute a market.

Lastly, Leegin argues, including "independent retailers" is in error, because it inappropriately limits the relevant market to a subset of retailers. Leegin argues that "independent retailers" lacks specificity, therefore, leaves the relevant market too vague to be a tenable definition. Further, Leegin argues, to the extent "independent retailers" is intended to describe some subset of retailers, such as stores like PSKS, the complaint fails to allege why it should be so limited. The court agrees. PSKS has cited no law or support as to how defining the market in the bounds of "independent retailers," no matter what they are, makes the alternative product market tenable. Relevant product markets include goods that are reasonably interchangeable in use. *E.I. duPont deNemours & Co.*, 351 U.S. at 393. PSKS has failed to allege the interchangeability, or lack thereof, between one subset of retailers and other retailers selling exactly the same products. *See Apani*, 300 F.3d at 628.

   2.   *Geographic Market*

The relevant geographic market "is the area of effective competition . . . in which the seller operates, and to which the purchaser can practicably turn for supplies." *Tampa Elect. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327 (1961). PSKS alleges that it purchases most of its

products from the Dallas Market (SAC ¶7) and alleges a product market of the greater Dallas area. SAC ¶24. Because, as discussed above, the wholesale market cannot be the relevant product market, the geographic area where PSKS purchases its products is irrelevant. Leegin does not "concede that [the Greater Dallas Area] is appropriate for the retail sale market; however, it is not moving to dismiss on these grounds." Dfts. MTD at 11 n. 4. "The Greater Dallas area" may be a tenable geographic market for the retail sales of Brighton Products. However, that matters little in that PSKS has not pleaded a tenable product market.

### B. Anticompetitive Effect

Leegin also argues that PSKS's failure to allege anticompetitive effects provides further reason for dismissing the case. The parties dispute whether the Supreme Court intended that a showing of a defendant's market power is a requisite for finding that a vertical price fixing agreement has an anticompetitive effect. The court need to reach this issue, however. Because PSKS has not defined a relevant market, the court cannot assess the alleged price fixing agreement's anticompetitive effect.

### C. Addition of Horizontal Restraint Theories

PSKS attempts to allege facts supporting a horizontal price fixing agreement and a horizontal hub and spoke conspiracy, both of which are illegal *per se*. PSKS's horizontal theories are based on the fact that Leegin is also a distributor of its own products. Leegin argues these new theories are barred because they were not raised in the original jury trial, the facts PSKS allege are still analyzed under the rule of reason, and the alleged facts fall short of supporting a cartel.

#### 1. *The Mandate Rule*

PSKS cannot now plead a horizontal restraint case that it failed to raise in the original trial. The Mandate Rule "bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *U.S. v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004).

PSKS cites to *Castellano v. Fagozo*, 352 F.3d 939 (5th Cir. 2003) for the proposition that when a higher court changes well established precedent, a party may pursue a claim it did not raise in the lower court out of non-necessity. In *Castellano*, the Fifth Circuit changed the law regarding the elements of a number of the plaintiff's federal claims such that a malicious prosecution claim previously asserted by the plaintiff was no longer redundant of his federal claims. On remand, the Fifth Circuit ordered that the plaintiff could re-file and pursue his malicious prosecution claim, despite the fact that he had previously voluntarily dismissed the claim. *Id.*

The case at bar is different from *Castellano*, however. Here, the Supreme Court did not specifically allow PSKS to re-plead allegations it had previously abandoned. First, the horizontal allegations were never raised in the original trial. Second, the Supreme Court did not mention what PSKS could plead on remand. More analogous to this case is *Continental TV, Inc. v. GTE Sylvania Inc.*, 461 F.Supp. 1046 (N.D. Cal. 1978), *aff'd* 694 F.2d 1132 (9th Cir. 1982). In *Continental*, the district court did not allow the plaintiff to plead horizontal allegations after the Supreme Court overruled *per se* illegality for the restraint at issue, and remanded the case to be tried under the rule of reason. *Id.* at 1051-52. In this case, nothing prevented PSKS from raising its horizontal agreement and conspiracy allegations in the original trial, and it cannot do so now.

    2.   ***Dual Distributorship Situations***

Even if the court were to allow PSKS to plead it its horizontal restraint allegations, those allegations fail as a matter of law. Where a manufacturer is both a wholesale distributor and retail distributor it is called a "dual distribution system." *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*, 637 F.2d 1001, 1004-1007 (5th Cir. 1981). Restraints in "dual distribution systems" are analyzed under the rule of reason. *Id.* The Fifth Circuit has held that in situations like Leegin's, where the manufacturer also distributes some of its own goods, restraints are properly analyzed under the rule of reason. *Id.* Eight other circuits have reached the same result.[1] PSKS argues that those cases are distinguishable because they did not deal with price fixing agreements, but instead dealt with other types of restraints.

PSKS urges that in *this type* of "dual distribution setting," where the restraints are price fixing agreements, "the natural checks and balances provided by the countervailing interests of manufacturer/consumer against those of the retailer as to retail and retail margins simply are not present." Pls. Response at 16. PSKS relies on *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305 (1956) to support its position. In *McKesson*, the defendant, a manufacturer and wholesale distributor, had entered price fixing agreements with other competing wholesale distributors of products manufactured by the defendants. Because the defendant participated as a

---

[1]*See, e.g., AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006) (agreement involving dual distributor arrangement remained "vertical" and analyzed under the rule of reason); *Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) (same); *Glacier Optical, Inc. v. Optique du Monde*, 46 F.3d 1141 (9th Cir. 1995) (not for publication) (same); *Smalley & Co. v. Emerson & Cuming, Inc.*, 13 F.3d 366, 368 (10th Cir. 1993) (same); *Hampton Audio Electronics, Inc. v. Contel Cellular, Inc.*, 966 F.2d 1442 (4th Cir. 1992), as amended, (Aug. 6, 1992) (same); *Ill. Corporate Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 753 (7th Cir. 1989) (same); *International Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 906 (6th Cir. 1989); *Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215, 1230, 92 A.L.R. Fed. 387 (8th Cir. 1987), (same).

wholesaler and manufacturer in the market, the court held the agreements in question were between "firms [or] corporations in competition with each other." As the Tennessee court pointed out, however, PSKS's reliance on *McKesson* is misplaced. *Spahr* at *6. "The issue before the Supreme Court was one of statutory interpretation . . . [it] did not address or discuss wether the restraints at issue were horizontal or vertical for Sherman Act purposes and its analysis has little, if any, application to the issue before the Court." *Id.*

The law in the Fifth Circuit is that these types of arrangements are dual distributorships and should be analyzed under the rule of reason. *Red Diamond Supply* 637 F.2d at 1004-1007. The *Red Diamond* court did not distinguish between price fixing and other types of restraints. Therefore, the same deficiencies in the rule of reason analysis above are present in PSKS's dual distributorship case.

### 3. Hub and Spoke Conspiracy

PSKS next attempts to have its case fit into a *per se* analysis by arguing it has pleaded facts showing that Leegin's price fixing activities are in furtherance of a "hub and spoke" retailer cartel.

> "A hub and spoke conspiracy involves a hub, generally the dominant purchaser or supplier in the relevant market, and the spokes, made up of the distributors involved in the conspiracy. The rim of the wheel is the connecting agreements among the horizontal competitors (distributors) that form the spokes. Each of the three parts is integral in establishing a *per se* violation under the hub and spoke theory."

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 435 n.3. "The critical issue for establishing a *per se* violation with the hub and spoke system is how the spokes are connected to each other . . ." *Id.* at 436. PSKS argues it "intends to prove that

12

there are a series of agreements between Leegin and independent retailers to fix prices of Brighton goods (spoke); that Leegin's independent retailers have formed a cartel with each other and with Leegin as a retailer to prevent discounting and price competition (wheel); that in response to pressure from retailers involved in the cartel, Leegin has enforced its price fixing agreements against discounters to stamp-out price competition (hub); that retailers have discussed and indeed come to agreements as to the terms of the price fixing agreements and exceptions thereto (wheel)." Pls. Response at 12-13. In analyzing the complaint in *Spahr*, the court explained:

> There is no allegation by plaintiffs here that retailers have agreed to fix prices and then compelled the manufacturer, Leegin, to utilize resale price maintenance. In fact, plaintiffs have affirmatively alleged the opposite, *i.e.*, that Leegin coerced retailers and forced upon retailers the resale price maintenance agreements.

*Spahr,* at *12.

It appears that PSKS has attempted to resolve this deficiency in its SAC in this case by adding the following paragraph (14):

> Brighton would, following the suggestion and concurrence of retail dealers, from time to time amend the Policy. One such instance occurred in January 2003, when Brighton invited some of its most successful retail dealers to Hawaii. One topic discussed at this conclave of retailers was the Brighton pricing policy. **A consensus of the retailers was reached, and the result of that meeting resulted in a policy being announced**: "What we have decided is OK after talking to more than 100 retailers is a birthday Club that on your birthday (or within a short time of your birthday) a consumer can get a discount on 1 piece of merchandise in your store (everything not only Brighton)."

This addition, however, is insufficient to properly plead a hub and spoke conspiracy. There is no allegation that retailers agreed to the alleged RPM among themselves. The allegations suggest not a retailer cartel, but that Leegin's interests were the driving force behind the program. PSKS argues that a jury could infer that because these retailers arrived at a consensus as to an

exception to the pricing policy, they discussed the pricing policy in more detail, discarded various other proposals for exceptions to the policy, and agreed to maintain the policy as a whole. This argument is unpersuasive, however.

PSKS must *allege* an agreement among the retailers. Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1965. In *Twombly*, the Supreme Court rejected an antitrust claim because the horizontal conspiracy was alleged without the level of detail–the who, what, when, where, and how. Here, PSKS has likewise failed to allege what is necessary, and there is no evidence that there are facts that would support such a claim. Without those facts, PSKS is missing the requisite wheel in the classic hub and spoke arrangement.

### D. State Law Claims

PSKS alleges that Brighton also violated Texas Business and Commerce Code § 15.05 *et seq.* SAC ¶ 34. Leegin argues that PSKS cannot now bring this cause of action because it already abandoned those claims before the previous trial. PSKS does not respond to Leegin's argument. PSKS's state law claims, therefore, are dismissed.

## IV. CONCLUSION

PSKS has not pleaded a tenable product market for a rule of reason analysis. PSKS cannot now bring horizontal restraint claims it never brought in the original trial in this case. Regardless of whether the court allows PSKS to add allegations to its SAC which support its horizontal restraints theories, those theories also fail as a matter of law. PSKS has likewise abandoned its state law claims in this case. Leegin's Motion to Dismiss is GRANTED.

SIGNED this 6th day of April, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE